IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAMEON COLE, ) | |
| No. R13404, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 14-cv-01059-JPG |
| ) | |
| CEDRICK L. JOHNSON, ) | |
| SALVADORE A. GODINEZ, ) | |
| BETH TREADWAY, ) | |
| GLADYS E. TAYLOR, ) | |
| TY BATES, ) | |
| SHERRY BENTON, ) | |
| MARC HODGE, ) | |
| STEVEN B. DUNCAN, ) | |
| UNKNOWN PARTIES, ) | |
| JEFFREY J. MOLENHOUR, ) | |
| MELISSA M. OCHS, ) | |
| HOWARD B. SIMMS, ) | |
| CHAD J. JENNINGS, and ) | |
| ELDON L. COOPER, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff Dameon Cole, who prefers to be called Devine Desire Cole, is a transgender inmate housed in Lawrence Correctional Center. Plaintiff brings this action for deprivations of her[1] constitutional rights pursuant to 42 U.S.C. § 1983, based on an ongoing, systemic failure to house Plaintiff with cellmates who do not pose a risk to her safety, and for otherwise ignoring her safety concerns.

---

[1] Although the Court must use Plaintiff's legal name, feminine pronouns will be utilized to refer to Plaintiff.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility. *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### Motion to Add Exhibits

As a preliminary matter, Plaintiff's motion for leave to add exhibits to the complaint (Doc. 9) must be addressed. Although Local Rule 15.1 generally requires a complaint to be submitted as a single document, amendment at this early point is permitted without leave of court. *See* Fed.R.Civ.P. 15(a)(1). In order to prevent further delay, Plaintiff's motion for leave to add exhibits (Doc. 9) will be granted and Doc. 1 and the exhibits (once they are filed) will be construed together as constituting the complaint.

**Synopsis of the Complaint**

The complaint offers a lengthy narrative of events running from approximately August 2013 through September 2014. Plaintiff describes herself as displaying some feminine characteristics, receiving feminine hormones, but not having had sexual reassignment surgery. Since arriving at Lawrence in March 2013, Plaintiff has had difficulty with her assigned cellmates. Initially, she was housed with gang members and older men—men who were bigger than she, and who were sexually propositioning her. When she told staff, in most instances her concerns were accommodated and a new cellmate was found. However, beginning in approximately January 2014, staff began forcing inmates to be celled with Plaintiff—inmates who propositioned her or simply did not want to be celled with her—creating a hostile, if not unsafe environment.

Plaintiff directed an emergency grievance to Warden Marc Hodge seeking placement under "vulnerable status," or to be single celled, or celled with an inmate from Plaintiff's list of acceptable inmates (*see* Exhibit A). According to the complaint, that grievance was denied, and the subsequent appeal to Sherry Benton, the administrator of inmate issues, was also unsuccessful, in that Benton found the grievance had not been properly submitted and/or it was premature and had to first be presented to a counselor (*see* Exhibit B).

Plaintiff complained to Lieutenant Chad J. Jennings about the situation, but Jennings stated that he was not the housing lieutenant, indicating that Plaintiff should wait to see that official, who Plaintiff asserts never appears in the housing unit.

Internal Affairs officers Jeffrey J. Molenhour and John Doe #1 interviewed Plaintiff and Plaintiff explained how Sergeant Newlin would "constantly walk in the bathroom on Plaintiff and was telling people that Plaintiff was a snitch. John Doe #1 explained that he had known

Newlin for many years and that it was Plaintiff who was "wrong for being gay." Molenhour did take down Plaintiff's statement, but nothing ever happened. Newlin is not a named defendant.

In March 2014, an inmate who staff purportedly knew was HIV-positive, was moved to Plaintiff's housing wing, Cedrick L. Johnson. Johnson and Plaintiff had a known "relationship," and on one occasion, at inmate Johnson's request, John Doe #3 opened Plaintiff's cell door so that Johnson and Plaintiff could have sexual relations. Plaintiff was unaware at that time that Johnson was HIV-positive; once Plaintiff found out, Johnson transferred out of the housing unit.

Panicked about the possible health consequences from having sex with Johnson, Plaintiff reported the sexual episode to officials. Internal Affairs Officer Molenhour and John Doe #4 interviewed Plaintiff. The correctional officer who had opened Plaintiff's cell was never disciplined, but Plaintiff received a disciplinary report for sexual activity. Major Jennings and C/O Eldon L. Cooper were on the disciplinary board that took Plaintiff's guilty plea; Plaintiff was punished with three months of segregation. Jennings and Cooper stated that Plaintiff would be transferred, but a transfer recommendation was not made a part of the disciplinary decision (*see* Ex. CC). Internal Affairs Officer Moldenhour also refused to speak with Plaintiff or to press criminal sexual assault charges against inmate Johnson.

In June 2014, Plaintiff sent an emergency grievance to Warden Duncan, but Plaintiff never received a response. Plaintiff forwarded the grievance to the Administrative Review Board requesting protective custody. Another grievance was lodged regarding the officer who allowed Johnson into Plaintiff's cell, but nothing ever happened. When Warden Duncan made rounds in the cellhouse, Plaintiff spoke to him directly, asking about the grievances and requesting protective custody. Warden Duncan laughed and said that he would have Internal Affairs speak with Plaintiff, but nothing ever happened.

In an apparent attempt to get officials to take action, Plaintiff wrote a "kite" to the warden, indicating that because he was punished for the sexual incident with Johnson, she would refuse future HIV tests and would set out to have sex with any willing inmate or staff member. Officer Molenhour issued Plaintiff a disciplinary report for intimidation or threats (*see* Ex. E). The disciplinary hearing committee comprised of C/O Howard B. Simms and Melissa M. Ochs, thought the disciplinary report was "funny" and they punished Plaintiff with three more months in segregation.

Plaintiff perceives that he is being retaliated against—presumably for the intimidating or threatening kite. Plaintiff's subsequent requests for protective custody were ignored and her next five cellmates all "indulged in prison sex." Grievances sent to Assistant Warden Beth Treadway have also not been addressed. In August 2014, when Plaintiff spoke with Warden Duncan about the unanswered grievances, Duncan only responded, "[D]o what you do and I'll deal with it when it happens; enjoy yourself." Then Duncan laughed and walked away.

Plaintiff details multiple staff assaults and other incidents that occurred to other inmates. Plaintiff explains that he lives in "steady and constant fear of retaliation from staff for grievances written."

In September 2014, Plaintiff was celled with an inmate even though both Plaintiff and the cellmate told C/O John Doe #5 and "a Lieutenant John Doe" that they "shared a difference," did not know what would happen if they were celled together, and they both feared for their lives. C/O John Doe #5 laughed and the unidentified officer told them they would have learn to "f*** or fight," and that he would be back in 20 minutes to see who was alive. Subsequent grievances sent to "all three wardens" were to no avail.

Plaintiff contends that Warden Duncan and Illinois Department of Corrections Director Salvadore A. Godinez both have policies, practices and customs of failing to investigate incidents, failing to separate or transfer known enemies, and failing to protect inmates, which lead to Plaintiff being injured.

Plaintiff alleges that the defendants failed to protect him and subjected him to cruel and unusual punishment in violation of the Eighth Amendment, and denied him his Fourteenth Amendment rights to due process and the equal protection of the law. The prayer for relief includes declaratory judgment, compensatory and punitive damages, preliminary and permanent injunctions, a transfer and guarantee that Plaintiff will never again be housed at Lawrence Correctional Center, and the criminal prosecution of inmate Johnson.

## Discussion

Because of the shotgun presentation of allegations, the Court finds it convenient to address the allegations against each defendant in turn.

### Cedrick L. Johnson

Section 1983 is only applicable to those acting under color of law, such as prison officials. *See* 42 U.S.C. § 1983; *Henderson v. Pate,* 409 F.2d 507, 508 (7th Cir. 1969) (absent any evidence that an aggressor-inmate was acting under color of law, that inmate cannot be held liable under Section 1983). Therefore, inmate Cedrick L. Johnson, who had sexual relations with Plaintiff without disclosing that he was HIV-positive, must be dismissed from this case. Because the complaint does not in any way suggest that the inmates were acting under color of law, dismissal will be with prejudice.

**Salvadore A. Godinez**

The complaint alleges that Director of the Illinois Department of Corrections Salvadore A. Godinez is responsible for the overall operation of the Department and each prison (*see* Doc. 1, p. 2). It is also asserted that Godinez has a custom and practice of filing to investigate known incidents (*see* Doc. 1, p. 17).

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). Consequently, the doctrine of *respondeat superior*—supervisor liability—is not applicable to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Thus, the mere fact that Godinez occupies a supervisory position is insufficient for liability to attach. Allegations that senior officials were personally responsible for creating the policies, practices and customs that caused a constitutional deprivation can, however, suffice to demonstrate personal involvement for purposes of Section 1983 liability. *See Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 615 (7th Cir. 2002).

The individual capacity claim against Director Godinez must be dismissed because the complaint offers only a bald assertion of a custom and practice, which is insufficient under the *Twombly* pleading standard. Similarly, any official capacity claim fails because liability stems from the execution of an official policy, practice or custom by a government official. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011). Defendant Salvadore A. Godinez will be dismissed without prejudice.

**Beth Treadway**

It is alleged that Plaintiff spoke to Assistant Warden Beth Treadway about unanswered grievances, his enemies, the sexual incident and Plaintiff's fear for her safety, but Treadway did nothing to aid Plaintiff (*see* Doc. 1, p. 14).

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. U.S. CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Eighth Amendment protection extends to conditions of confinement that pose a substantial risk of serious harm, including health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). Furthermore, prison officials have a duty to protect prisoners "from violence at the hands of other inmates." *See Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002). A prison official may be liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Proving deliberate indifference requires more than a showing of negligent or even grossly negligent behavior. *Id*. at 835. Rather, the corrections official must have acted with the equivalent of criminal recklessness. *Id*. at 836–37.

The allegations that Plaintiff was housed with cellmates who posed a danger to Plaintiff's safety, and that HIV-positive inmate Cedrick Johnson was allowed to have sexual relations with Plaintiff when Johnson's HIV status was known to prison officials, fall with the ambit of the Eighth Amendment. At this early juncture, it cannot be conclusively determined that Assistant Warden Treadway was not deliberately indifferent when she was told about the dangers Plaintiff was facing and did nothing. Therefore, a colorable Eighth Amendment claim against Treadway in her individual capacity has been stated and shall proceed as "Count 1."

**Gladys E. Taylor and Ty Bates**

The listing of defendants in the compliant describes Gladys E. Taylor as being the assistant director of the Illinois Department of Corrections, responsible for the overall operation of the Department and each prison (*see* Doc. 1.p. 2). Ty Bates is described as being the regional deputy director, responsible for overall operations and the operation of each prison (*see* Doc. 1, p. 2). However, the narrative portion of the complaint does not mention Taylor or Bates. Merely naming a defendant in the caption is insufficient to state a claim. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Consequently, Gladys E. Taylor and Ty Bates will be dismissed without prejudice.

**Sherry Benton**

It is alleged that Sherry Benton in the Office Of Inmate Issues, received the appeal of Plaintiff's grievance(s) and provided no remedy (*see* Doc. 1, p. 7). Merely "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir.2007; *see also McGee v. Adams*, 721 F.3d 474, 485 (7th Cir. 2013). Therefore, Sherry Benton will be dismissed without prejudice.

**Marc Hodge**

It is noted in the complaint that Marc Hodge is the warden of Lawrence and responsible for the welfare of all inmates (*see* Doc. 1, p. 3). It is further alleged that Hodge did nothing in response to Plaintiff's emergency grievance in January 2014 (*see* Doc. 1, p. 6; and Ex. A). Although the *respondeat superior* doctrine is inapplicable (*see Sanville*, 266 F.3d at 740), the emergency grievance may have provided Warden Hodge with sufficient knowledge to implicate the Eighth Amendment. *See Santiago v. Walls*, 599 F.3d 749, 759 (7th Cir. 2010) (submission of

grievance to the warden is sufficient to state a claim at the pleading stage). Consequently, an Eighth Amendment "failure to protect" claim shall proceed against Warden Marc Hodge, and that claim shall be designated "Count 2." *See Washington v. LaPorte County Sheriff's Dep't,* 306 F.3d 515, 517 (7th Cir. 2002) (prison officials have a duty under the Eighth Amendment to protect a prisoner from violence at the hands of other inmates).

**Steven B. Duncan**

Steven B. Duncan is also described as being the warden of Lawrence (*see* Doc. 1, p. 3). It is alleged that Duncan failed to respond to Plaintiff's June 2014 emergency grievance about a guard allowing Plaintiff to have sexual relations with a known HIV-positive inmate (Ex. D) (Doc. 1, p. 12). It is further alleged that Plaintiff spoke directly to Duncan, asking for protective custody, but Duncan laughed and took no action (Doc. 1, p. 14). Furthermore a custom and practice of failing to investigate is alleged (Doc. 1, p. 17). Plaintiff has stated a colorable Eighth Amendment "failure to protect" claim against Warden Steven B. Duncan in both his official and individual capacity; that claim shall be designated as "Count 3."

**Jeffrey J. Molenhour**

It is alleged that Internal Affairs Officer Jeffrey J. Molenhour refused to permit Plaintiff to press criminal charges after a guard allowed Plaintiff to have sexual relations with an HIV-positive inmate (Doc. 1, p. 12). There is no constitutional right to have criminal charges brought against an individual, and there are no allegations suggesting retaliation or a denial of equal protection (*see generally Esmail v. Macrane*, 53 F.3d 176 (7th Cir. 1995) (in re failure to prosecute all known law breakers).

It is also alleged that Molenhour was informed that one of Plaintiff's known enemies had moved onto Plaintiff's housing unit, and the enemy was moved (*see* Doc. 1, p. 8).  There is no suggestion of deliberate indifference in that instance.

Similarly, no claim has been stated relative to Officer Molenhour taking down Plaintiff's statement about how C/O Newlin was harassing Plaintiff in the shower area (*see* Doc. 1, pp. 8-9).

Lastly, it is alleged that Molenhour issued Plaintiff a disciplinary ticket for admittedly having sexual relations with inmate Johnson (*see* Doc. 1, p. 13, Ex. CC).  Plaintiff implies that Molenhour should have been more concerned that a guard had knowingly set Plaintiff up to contract HIV than the fact that Plaintiff had committed sexual misconduct.  Merely issuing a ticket for an admitted violation of prison rules is not a constitutional violation, and the fact that Molenhour's priorities may have been skewed does not implicate the constitution.

For the reasons stated, all possible claims against Officer Jeffery J. Molenhour will be dismissed without prejudice.

**Melissa M. Ochs and Howard B. Simms**

It is alleged that Melissa M. Ochs and Howard B. Simms were members of the disciplinary hearing committee that punished Plaintiff with three months in segregation for intimidation and threats after Plaintiff threatened to refuse HIV testing and to have sex with any willing inmates or staff and risk transmitting HIV (*see* Ex. K).  Ochs and Simms purportedly found the incident "funny" (*see* Doc. 1, p. 13).   No constitutional right is implicated in this situation.  Therefore, Melissa M. Ochs and Howard B. Simms will be dismissed without prejudice.

**Chad J. Jennings and Eldon L. Cooper**

Chad J. Jennings and Eldon L. Cooper were members of the disciplinary committee that heard that punished Plaintiff with three months in segregation for admittedly having sexual relations with inmate Johnson (*see* Ex. CC). Plaintiff takes issue with their not carrying through with a promise to recommend that Plaintiff be transferred. Plaintiff also takes issue with their not pressing criminal charges against the guard who allowed Johnson into Plaintiff's cell.

Breaking a promise is certainly not, by itself, a constitutional violation, and there is no *per se* constitutional right to have someone criminally prosecuted. Moreover, there is no indication that Jennings and Cooper failed to protect Plaintiff from harm—the incident was in the past, and apparently Johnson was no longer celled on Plaintiff's unit.

Insofar as Jennings declined a request to move Plaintiff to a different cell because he, Jennings, was not the "housing lieutenant," there is insufficient information from which to infer deliberate indifference." As pleaded, this claim suggests merely that Jennings was indicating that he did not have authority to make the move.

As pleaded, the complaint fails to state a claim against Chad J. Jennings and Eldon L. Cooper and they will be dismissed without prejudice.

**Unknown Parties—John Does #1- #5**

A claim may be asserted against an unidentified defendant, with the hope that the individual will be identified during the discovery process. However, the complaint does not make clear which "John Doe" defendant did what. For example, the complaint refers to "a correctional officer John Doe 5 and a lieutenant John Doe," leaving the Court to guess which "John Doe" is involved (*see* Doc. 1, p. 15, ¶ 96). John Does #1- #3 are all described as lieutenants (Doc. 1, pp. 3-4), and Plaintiff's designations are not clear—there is a "John Doe"

and a "John Doe 1" (*see* Doc. 1, p. 3). Plaintiff will have to more clearly state his claims against the unidentified defendants if the Court is to discern whether colorable claims have been stated against them. All unidentified "John Doe" defendants will, therefore, be dismissed without prejudice.

## Motion for Injunctive Relief

Plaintiff Cole has also filed a proposed order granting a temporary restraining order and setting a hearing for a preliminary injunction— all aimed at prohibiting defendants from "stopping plaintiff from eating her meal trays, putting things in her food, stop ripping up her grievances and throwing them in the trash, stop forcing plaintiff from living in the cell with dangerous and threatening inmates, stop throwing plaintiff's mail in the trash, stop tormenting and humiliating plaintiff in front of other inmates;" transfer plaintiff to another prison where her safety is not in jeopardy. For officials to press criminal charges against Cedrick Johnson;" and for defendants to stop "torturing plaintiff, holding plaintiff's mail and grievances, the passing out of plaintiff's food trays, working around plaintiff, [and] humiliating plaintiff in front of other inmates" [sic] (Doc. 3). Even if the proposed order is construed as a motion, the motion must be denied.

A TRO is an order issued without notice to the party to be enjoined that may last no more than 14 days. FED. R. CIV. P. 65(b)(2). A TRO may issue without notice *only* if:

> (A) specific facts in an affidavit or a verified complaint clearly show that *immediate and irreparable injury, loss, or damage* will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED.R.CIV.P. 65(b)(1) (emphasis added). Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

A preliminary injunction is issued only after the adverse party is given notice and an opportunity to oppose the motion. FED.R.CIV.P. 65(a)(1). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008) (citations omitted).

As the Seventh Circuit has noted, "[a]n injunction is an equitable remedy that does not issue as a matter of course, but rather a remedy that courts may grant at their discretion in the extraordinary situations where legal remedies such as monetary damages are inadequate. *Bedrossian v. Northwestern Memorial Hosp.*, 409 F.3d 840, 842 (7th Cir. 2005).

The proposed order is nothing more than a laundry list of things Plaintiff wants defendants to cease doing, with no stated rationale. Not all of the behaviors are even mentioned in the complaint, so the Court is left to wonder if all of these behaviors have occurred in the past or what basis there is for finding them sufficiently probable to occur in the future.

The one matter of concern if whether a transfer or other protective measure is warranted in order to protect Plaintiff from sexual assault or other physical harm—matters raised in the complaint. However, a close review of the compliant reveals that Plaintiff and his present cellmate were "not getting along," which is too vague to warrant injunctive relief (*see* Doc. 1, p. 16). The complaint also includes a general assertion of being "in steady and constant fear of

retaliation from staff for grievance written," which is too vague to provide a basis for injunctive relief (*see* Doc. 1, p. 15).

Plaintiff's proposed order/motion for injunctive relief (Doc. 3) will therefore be denied without prejudice. Plaintiff is free to file a proper motion that is more than a mere laundry list.

### Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, Plaintiff's motion for leave to add exhibits (Doc. 9) is **GRANTED**; Doc. 1 and the exhibits—once they are filed—will be construed together to form the complaint.

**IT IS FURTHER ORDERED** that Plaintiff's proposed order/motion for injunctive relief (Doc. 3) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that all claims against Defendant **CEDRICK L. JOHNSON** are **DISMISSED with prejudice**; therefore, **JOHNSON** is **DISMISSED without prejudice** from this action.

**IT IS FURTHER ORDERED** that all claims against Defendants **GLADYS E. TAYLOR, TY BATES, SALVADORE A. GODINEZ, SHERRY BENTON, JEFFERY J. MOLENHOUR, MELISSA M. OCHS, HOWARD B. SIMMS, CHAD J. JENNINGS, ELDON L. COOPER, and All UNIDENTIFIED "JOHN DOE" DEFENDANTS** are **DISMISSED without prejudice**; accordingly those defendants are **DISMISSED without prejudice** from this action.

**IT IS FURTHER ORDERED** that the Eighth Amendment claim against **BETH TREADWAY** in her individual capacity shall **PROCEED** as **"Count 1."**

**IT IS FURTHER ORDERED** that the Eighth Amendment "failure to protect" claim against **MARC HODGE** in his individual capacity shall **PROCEED** as **"Count 2."**

**IT IS FURTHER ORDERED** that Eighth Amendment "failure to protect" claim against **STEVEN B. DUNCAN** in both his official and individual capacity shall **PROCEED** as **"Count 3."**

The Clerk of Court shall prepare for Defendants **BETH TREADWAY** in her individual capacity, **MARC HODGE** in his individual capacity, and **STEVEN B. DUNCAN** in both his official and individual capacity: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.

If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received

by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 6, 2014**

*s/J. Phil Gilbert*
**United States District Judge**