## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAMEON COLE,     )
            )
     Plaintiff,  )
            )
  v.        )   Case No. 14- CV-1059-MJR-RJD
            )
BETH TREDWAY,    )
MARC HODGE,     )
STEVEN DUNCAN,   )
CHAD RAY,      )
COREY KNOP,     )
JOHN #1 DOE, AND   )
JOHN #2 DOE,     )
     Defendants. )

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

 **I.**  **Introduction**

 This case is now before the Court on the Motion for Summary Judgment by Defendants Steven Duncan, Marc Hodge, Corey Knop, Chad Ray, and Beth Tredway (Doc. 103). Plaintiff Dameon Cole is an inmate with the Illinois Department of Corrections ("IDOC"), currently housed at Dixon Correctional Center. The events giving rise to this complaint occurred at Lawrence Correctional Center. Defendants in this case are current or former employees of the IDOC. On October 1, 2014, Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated her

constitutional rights[1] (Doc. 1).   On Nov. 6, 2014, the complaint underwent threshold review as to Defendants Tredway, Duncan, and Hodge (Doc. 11).   On July 1, 2015, the Court approved the inclusion of Defendants Knop and Ray (Doc. 76).   Discovery proceeded, and the case now comes before the Court for summary judgment.

Plaintiff now proceeds on her first amended complaint.   Count 1 is an Eighth Amendment claim against Defendant Beth Tredway for failure to protect the Plaintiff after she complained of harassment by inmates based on her transgender status and harassment by a correctional officer who referred to her as a "stool pigeon."   Count 2 is an Eighth Amendment failure to protect claim against Defendant Marc Hodge for failing to respond to Plaintiff's grievance, dated June 21, 2014.   Count 3 is an Eighth Amendment failure to protect claim against Defendant Steven Duncan, in both his individual and official capacity, for failing to respond to Plaintiff's complaints of harassment from inmates based on her transgender status, and also her complaints regarding inmate Cedrick Johnson.   Count 4 is an Eighth Amendment failure to protect claim against Defendant Corey Knop for allowing Cedrick Johnson, an HIV-positive inmate, into Plaintiff's cell for the purpose of allowing the two inmates to engage in sexual activity.   Count 5 is an Eighth Amendment claim against Defendant Chad Ray for exposing Plaintiff to a risk of harm by allowing inmate Calvin Merritte to be her

---

[1] Plaintiff has informed that Court that she prefers the name, "Divine" and uses feminine pronouns to refer to herself.   (Doc. 71.)   Although the Court must refer to Plaintiff by her legal name, the Court will honor Plaintiff's choice of pronouns for purposes of this Memorandum and Order.

cellmate.  Defendants seek summary judgment on all counts.  For the following reasons, the Court grants Defendants' Motion for Summary Judgment.

## II.    Background

From March 2013 to February 2016, Plaintiff, a transgender female, was incarcerated at Lawrence Correctional Center (Doc. 71; Doc. 103-1 at 4).  During this time, Defendant Tredway served as the Assistant Warden of Programs, and Defendants Hodge and Duncan both served as Warden (*Id.*).  Defendants Knop and Ray served as correctional officers (*Id.*).

At Plaintiff's deposition, she testified as follows.  In 2013 and 2014, during transgender community meetings, Plaintiff informed Defendant Tredway of her general concerns regarding the reactions of inmates when assigned to share a cell with transgender inmates – that even if the other inmates were not violent, they would either refuse housing or force the transgender inmates to refuse housing (Doc. 103-1 at 5-7).  Plaintiff also informed Defendant Tredway of her specific concerns that other inmates harassed her by winking, licking their lips, grabbing their genitals and propositioning her for sex (*Id.* at 6-7).  Specifically, on one occasion, Plaintiff told Defendant Tredway that an inmate propositioned her after entering her cell (*Id.* at 6).  Plaintiff immediately flagged Defendant Tredway and reported the inmate, but Defendant Tredway laughed, walked away, and did not address the complaint (*Id.*).  Additionally, Plaintiff told Defendant Tredway that a correctional officer told other inmates that Plaintiff was a

"stool pigeon" based on Plaintiff's complaints of harassment (*Id.*).  Plaintiff requested protective custody (*Id.*).

In Defendant Tredway's declaration, she attested that she recalled Plaintiff generally complained regarding housing issues but did not recall that Plaintiff complained of specific threats from specific inmates or correctional officers (Doc. 103-2). Defendant Tredway attested that she did not have the authority to place Plaintiff in protective custody and that Lawrence Correctional Center had no protective custody unit, but, if Plaintiff had complained of specific threats, Defendant Tredway would have forwarded the complaint to the appropriate staff member to address the complaint (*Id.*).

On January 21, 2014, Plaintiff submitted an emergency grievance to Defendant Hodge complaining of her cellmates' attempts to engage in sexual activity with her and of her repeated cell assignments with sexually active inmates that were attracted to her or otherwise had a problem with her (*Id.* at 7-8; Doc. 71 at 69-70).  The grievance specifically described verbal propositions for sex, cellmates walking around with "hard ons," and cellmates that refused the cell assignment based on Plaintiff's transgender status (Doc. 71 at 69-70).  In the grievance, she requested her own cell or to be placed with a more compatible cellmate (*Id.*).  The grievance form defines "emergency grievance" as a grievance that indicates "a substantial risk of imminent personal injury or other serious or irreparable harm to self" (*Id.*).  Defendant Hodge found that the

grievance did not substantiate an emergency and instructed Plaintiff to submit the grievance in the normal manner (*Id.*).  The record contains no indication that Plaintiff resubmitted the grievance.

At her deposition, Plaintiff testified that in March 2014, Plaintiff and Cedrick Johnson, an inmate, engaged in consensual sex in Plaintiff's cell (Doc. 103-1 at 4-5). Plaintiff learned that Cedrick Johnson was HIV positive about two weeks later (*Id.*). Whether Defendant Knop allowed Cedrick Johnson into Plaintiff's cell remains disputed, but both Plaintiff's testimony and Defendant Knop's declaration indicate that Defendant Knop did not know of Cedrick Johnson's medical condition at this time (*Id.* at 4; Doc. 103-3).

An offender disciplinary report indicates that, on May 30, 2014, Plaintiff informed a counselor that she engaged in sexual activity with Cedrick Johnson, who was HIV-positive, and requested immediate medical attention (Doc. 71 at 50-51). Counselor Musgrave notified the mental health department and the health care administrator (*Id.*).  According to the report, Plaintiff and Cedrick Johnson confirmed that they engaged in sexual activity but disagreed as to the specific details (*Id.*).  On June 3, 2014, the reviewing officer found that Plaintiff committed a major infraction and submitted the matter for hearing (*Id.*).  The final summary report of the adjustment committee indicates that Plaintiff pled guilty and received three months of C grade and segregation as discipline (*Id.* at 52).

According to Plaintiff's deposition testimony, in June 2014 and on several occasions thereafter, Plaintiff informed Defendant Duncan of "everything that was going on" and requested protective custody (Doc. 103-1 at 8).  Plaintiff testified that, in June 2014, Plaintiff sent a letter to Defendant Duncan in which she demanded her own cell and stated that she would engage in sexual activity with every inmate assigned to her cell (*Id.*).  Defendant Duncan laughed and told her, "You do what you do, and I'll do what I do," and did not provide Plaintiff with her own cell (*Id.* at 8-9).

On June 21, 2014, Plaintiff submitted an emergency grievance regarding Plaintiff's disciplinary proceedings and requested protective custody from internal affairs officers and to press criminal charges against Cedrick Johnson (Doc. 71 at 71-72).  In the complaint, Plaintiff attests that she sent the grievance directly to Defendant Duncan (Doc. 71 at 11).

An offender committee report indicates that, on July 2, 2014, Plaintiff sent an officer a note, stating, "I've been found guilty of an 107 sexual misconduct with an HIV positive I/M.  In October when I'm suppose to take the test again, I will not, and I will fuck every slinging dick I see.  Every cellmate, and staff this willing to participate.  Male and female" (Doc. 71 at 54; Doc. 103-4).  The reviewing officer found that Plaintiff committed a major infraction by sending that note, and Plaintiff was subsequently disciplined (Doc. 71 at 53-54).

Plaintiff testified that, in September 2014, Calvin Merritte was assigned to Plaintiff's cell (Doc. 103-5 at 10-11). Plaintiff and Merritte had previously engaged in a verbal altercation due to Merritte's distaste for Plaintiff's transgender status (*Id.* at 10). Both Plaintiff and Merritte informed Defendant Ray of the verbal altercation and that the cell assignment was a safety issue (*Id.* at 10-11).

Plaintiff's testimony indicates that Defendant Ray removed Merritte from the cell to review paperwork (*Id.* at 11). Plaintiff testified that Defendant Ray returned and placed Merritte in the cell (*Id.* at 11). Plaintiff notified Defendant Ray that the cell had only one mattress, and Defendant Ray responded, "I guess one of you are going to learn how to fuck or fight," and walked away laughing (*Id.*). On September 8, 2014, Plaintiff submitted a grievance that indicated that Defendant Ray also said, "I'll be back in twenty minutes to see who's still alive," and, "I know one of you know how to fuck" (Doc. 71 at 94-95). In an affidavit, Defendant Ray denies any recollection of the incident but attests that, in such instances, he would remove a cellmate from the cell, review the inmates' disciplinary records and "keep separate from" lists and consult with the placement office (Doc. 103-5). Plaintiff testified that Merritte later left Plaintiff's cell without harming Plaintiff (Doc. 103-1 at 11). Plaintiff further testified that she was never physically or sexually assaulted by another inmate (*Id.* at 8).

Plaintiff has attached to the complaint administrative directives from the IDOC regarding the grievance process, double celling of inmates in segregation and protective

custody, protective custody, inmate sexual assaults, and the prevention of sexual harassment in the workplace (Doc. 71 at 20-49).  The inmate sexual assault policy allows for prisoners to report incidents of sexual assault or potential victimization and requires prompt attention to such complaints (*Id.* at 36-43).  Plaintiff also attached grievance-documents and eight affidavits from other inmates that bear no relevance to the claims remaining before the Court (Doc. 71 at 55-67, 79-81, 85-92, 96).

### III.   Legal Standards

1.   Summary Judgment

Defendants move for summary judgment against Plaintiff on all five counts. Federal Rule of Civil Procedure 56(a) states that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  When faced with a motion for summary judgment, the Court shall "examine the record and all reasonable inferences in the light most favorable to the non-moving party."  *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014).  Summary judgment must be denied "if a material issue of fact exists that would allow a reasonable jury to find in favor of the non-moving party."  *Id.*

2.   Deliberate indifference/failure to protect

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment.  U.S. CONST., amend. VIII.  Under this amendment,

a duty is imposed on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. "[I]n order to state a section 1983 claim against prison officials for failure to protect, [Plaintiff] must establish: (1) that [she] was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to [her] health or safety. *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). Plaintiff must further establish either harm or exposure to the risk of harm as a result of a prison official's sadistic or malicious intent. *Babcock v. White*, 102 F.3d 267, 270 (7th Cir. 1996).

In the context of failure to protect cases, the Seventh Circuit has equated "substantial risk" to "risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). These risks include "risks attributable to detainees with known propensities of violence toward a particular individual or class of individuals; to highly probable attacks; and to particular detainees who pose a heightened risk of assault to the plaintiff" or heightened risks based on the characteristics of the plaintiff. *Id.*; *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000). As noted by the Seventh Circuit:

> Prison employees who act with deliberate indifference to the inmates' safety violate the Eighth Amendment. But to be guilty of "deliberate indifference" they must know they are creating a substantial risk of bodily harm. If they place a prisoner in a cell that has a cobra, but they do not

know that there is a cobra there (or even that there is a high probability that there is a cobra there), they are not guilty of deliberate indifference even if they should have known about the risk, that is, even if they were negligent—even grossly negligent or even reckless in the tort sense—in failing to know.  But if they know that there is a cobra there or at least that there is a high probability of a cobra there, and do nothing, that is deliberate indifference.

*Billman v. Indiana Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995).

"In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety."  *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).  "A vague, general fear of harm that is not based on a specific threat is not enough to state a cause of action for deliberate indifference or failure to protect."  *Beasley v. Stephens*, 2011 WL 2670189, *1, *3 (S.D. Ill. 2011).

3.      Qualified Immunity

Defendants assert the affirmative defense of qualified immunity.  Generally, government officials are protected from civil liability when performing discretionary functions under the doctrine of qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001).  Thus, in order to evaluate a claim of qualified immunity, the Court engages in a two-step analysis.  First, the Court considers whether a plaintiff's claim states a violation of his constitutional rights.  Then,

the Court determines whether those rights were clearly established at the time the violation occurred.  *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000).

For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  The unlawfulness of a particular official's action must be apparent "in light of the pre-existing law."  *Id.*  A party may demonstrate that a right was clearly established by presenting a closely analogous case establishing the defendant's conduct was unconstitutional or by presenting evidence the defendant's conduct was so patently violative of the constitutional right that reasonable officials would know without guidance from a court.  *See Hope*, 536 U.S. at 739–40.

As set forth below, the Court finds that the record contains insufficient evidence to support Plaintiff's claims.  Therefore, the Court need not consider whether Defendants are entitled to qualified immunity.

## IV.    Legal Analysis

### Count 1

Plaintiff alleges that Defendant Beth Tredway's failure to respond to her complaints of harassment, from inmates based on her transgender status and from a correctional officer for referring to Plaintiff as a "stool pigeon," constitutes a violation of the Eighth Amendment for failure to protect.  Defendant Tredway argues that Plaintiff

cannot demonstrate that Defendant Tredway knew of a significant risk of harm to Plaintiff or that Defendant Tredway acted with the sufficiently culpable state of mind.

Plaintiff testified that she reported to Defendant Tredway that other inmates specifically harassed her by winking, licking their lips, and grabbing their genitals in her presence as well as propositioning Plaintiff for sex and that an officer referred to her as a "stool pigeon."  However, simple verbal harassment does not rise to the level of a constitutional violation.  *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000); *Allen v. Wine*, 297 F. App'x 524, 530 (7th Cir. 2008) (applying *DeWalt* to "sexual harassment consisting of words and gestures").  Plaintiff's testimony also implies that some inmates assault transgender inmates when assigned to share a cell, but the record contains no evidence that Plaintiff reported to Defendant Tredway that any inmate or officer imposed any physical force on Plaintiff or issued threats thereof.  While Plaintiff claims she was propositioned for sex, she does not claim anyone threatened involuntary sexual contact. Defendant Tredway further attested that Plaintiff complained generally about housing but did not recall that Plaintiff complained of any specific threats.

The Court observes that, in cases where an inmate's claims for failure to protect against the risk of sexual assault survived summary judgment, the record contained evidence of correctional officers' knowledge of a specific and substantial threat.  For example, those cases include evidence of the criminal history and prior sexual misconduct of those posing the risk, repeated advances consisting of sexual, physical

contact, the prevalence of sexual assault or violence at a particular institution, and multiple instances in which the plaintiff inmate was the victim of attempted or actual sexual assault.  *See e.g., Farmer*, 511 U.S. at 849; *Nelson v. Shuffman*, 603 F.3d 439, 447 (8th Cir. 2010); *Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998); *Eidam v. Lafler*, 2012 WL 651651, *1 (W.D. Mich. 2012); *Jones v. Banks*, 878 F. Supp. 107, 108 (N.D. Ill. 1995).  The Court does not suggest that a risk must necessarily rise to this level in order to assert a valid constitutional claim but that the evidence before the Court – testimony that Plaintiff complained regarding propositions, winking, and other sexually suggestive gestures from other inmates – falls short of establishing that Defendant Tredway was aware of a substantial risk of bodily harm to Plaintiff.

The Court has not found any cases in which claims survived summary judgment with facts similar to those here.  The Court finds that the facts of this case most closely resemble those in *Fletcher v. Phelps*, 639 F. App'x 85 (3d Cir. 2015).  In *Fletcher*, an inmate complained that another inmate had harassed him due to his sexual orientation, touched him, and propositioned him for sex.  The Third Circuit found that "[e]ven if it can be inferred that Fletcher was at greater risk of harm than other inmates due to his sexual orientation, the evidence is insufficient to show that [the defendant officer] was aware of a substantial risk of harm."  *Id.* at 88.  Additionally, in *Reis v. Augustine*, 2014 WL 6611584 (N.D. Fla. 2014), an inmate complained that another inmate propositioned him for sex, threatened violence when he declined, and that he had to defend himself

from physical attacks.  The court found the lack of specificity fatal, noting that the plaintiff inmate failed to describe any threatening conduct or acts of physical or verbal aggression.  *Id.* at *5.  Here, the claims fall short of even those alleged in *Fletcher* and *Reis*; Plaintiff has alleged no physical contact nor has she alleged physical violence or threats thereof.

Although the accounts of Plaintiff and Defendant Tredway differ, the record contains no evidence that Defendant Tredway had any notice that other inmates or the officer presented a substantial risk of serious bodily harm to Plaintiff.  Because the evidence before the Court falls short of demonstrating that Defendant Tredway knew of a substantial risk of bodily harm to Plaintiff, the Court grants Defendants' Motion for Summary Judgment with respect to Count 1.

<u>Count 2</u>

Plaintiff alleges an Eighth Amendment claim against Defendant Hodge for failing to respond to Plaintiff's grievance, dated January 21, 2014.  Defendants argue that Plaintiff cannot demonstrate that Defendant Hodge knew of a significant risk of harm to Plaintiff or that Defendant Hodge acted with the sufficient culpable state of mind.

On January 21, 2014, Plaintiff submitted an emergency grievance to Defendant Hodge complaining of her cellmates' attempts to engage in sexual activity with her and of her repeated cell assignments with sexually active inmates that were attracted to her

or otherwise had problems with her. Defendant Hodge found that the grievance did not substantiate an emergency and instructed Plaintiff to submit the grievance in the normal manner. The grievance specifically described verbal propositions for sex, cellmates walking around with "hard ons," and cellmates that refused the cell assignment based on Plaintiff's transgender status. The grievance did not describe an "emergency" as defined by the grievance form and further did not describe a substantial risk of bodily harm, such as acts or threats of violence, but merely described simple harassment. No evidence indicates that Plaintiff resubmitted the grievance while Defendant Hodge was warden. As discussed with respect to Defendant Tredway, the evidence falls short of demonstrating that Defendant Hodge had any knowledge that any inmate presented a substantial risk of bodily harm towards Plaintiff.

Because the evidence before the Court falls short of demonstrating that Defendant Hodge knew of substantial risk of bodily harm to Plaintiff, the Court grants Defendants' Motion for Summary Judgment with respect to Count 2.

<u>Count 3</u>

Plaintiff alleges an Eighth Amendment claim against Defendant Duncan, in both his individual and official capacity, for failing to respond to Plaintiff's complaints of harassment from inmates based on her transgender status and her complaint regarding inmate Cedrick Johnson. Plaintiff further alleges that Defendant Duncan failed to

respond to her grievance dated June 21, 2014.  Defendants argue that Plaintiff cannot

demonstrate that she faced a substantial risk of harm or that Defendant Duncan was

personally involved in any constitutional violation.

Viewing the evidence in the light most favorable to Plaintiff, the following

occurred.   In June 2014 and on several occasions thereafter, Plaintiff informed

Defendant Duncan of "everything that was going on" and requested protective

custody.  Plaintiff sent a letter to Defendant Duncan in which she demanded her own

cell and stated that she would engage in sexual activity with every inmate assigned to

her cell.  Defendant Duncan laughed and told her, "You do what you do, and I'll do

what I do," and did not provide Plaintiff with her own cell.

To the extent that Plaintiff refers to the cell assignments and harassment, simple

harassment does not rise to the level of a constitutional violation.  *DeWalt*, 224 F.3d at

612.  Given the sequence of events, it is likely that Plaintiff also refers to the alleged

sexual encounter with Cedrick Johnson, who was HIV positive, which did present a

substantial risk of bodily harm.  However, no evidence suggests that Cedrick Johnson

posed any threat to Plaintiff by the time Plaintiff notified Defendant Duncan.

Additionally, no evidence suggests that Plaintiff's threat to engage in sexual activity

with her cellmates constituted a substantial risk of bodily harm to Plaintiff.  *See Freitas*

*v. Ault*, 109 F.3d 1335, 1339 (8th Cir. 1997) ("[W]elcome and voluntary sexual

interactions, no matter how inappropriate, cannot as matter of law constitute "pain" as contemplated by the Eighth Amendment.").

Plaintiff also alleges that she sent a grievance directly to Defendant Duncan on June 21, 2014. The record contains an emergency grievance from that date regarding Plaintiff's disciplinary proceedings, a request for protective custody from internal affairs officers and, a request to press criminal charges against Cedrick Johnson. However, the grievance does not describe a substantial risk of bodily harm to Plaintiff. Further, the record contains no evidence that Defendant Duncan ever received the grievance.

Because the evidence before the Court falls short of demonstrating that Defendant Duncan knew of substantial risk of bodily harm to Plaintiff, the Court grants Defendants' Motion for Summary Judgment with respect to Count 3.

* * *

On October 24, 2016, the Seventh Circuit issued an opinion in *Ramos v. Hamblin*, 840 F.3d 442 (7th Cir. 2016), which the Court finds instructive as Counts 1-3 pertain to cell assignments. Ramos, a prisoner, alleged that he was placed in a cell with DaSilva, another prisoner, who later sexually assaulted Ramos in their cell. *Id.* Ramos reported the sexual assault to a correctional officer, which resulted in criminal and disciplinary charges against DaSilva and a notice that Ramos and DaSilva were not to share a cell. *Id.* Ramos sued the supervisory prison officials, alleging that they acted with deliberate

indifference to the risk that DaSilva would sexually assault Ramos in light of DaSilva's prior sexual assault conviction and the perception that Ramos was a homosexual.  *Id.* Ramos further attacked the practice of random cellmate assignment.  *Id.*  The district court granted summary judgment and dismissed Ramos' claims, and Ramos appealed to the Seventh Circuit.  *Id.*

Judge Richard A. Posner, writing for the Seventh Circuit, observed that no evidence indicated that Ramos expressed concern to prison staff that he was vulnerable to sexual assault and that no evidence indicated that prison staff had any reason to suspect that Ramos was perceived as a homosexual.  *Id.*  The court further observed that no evidence suggested that Ramos was particularly vulnerable to sexual assault given his size and the prior criminal activity committed by the two prisoners.  *Id.*  The court found no reason to suspect that the prison officials knew of a nontrivial risk of sexual assault, could have prevented it without undue burden, but did nothing.  *Id.*

The court advised that Ramos should have complained to prison staff in accordance with the prison handbook and further rejected Ramos' objection to the random cellmate assignment policy.  *Id.*  The court noted that the only alternative proposed by Ramos was that "sex offenders never be placed in cells with any inmate who for whatever reason is at a heightened risk of being sexually assaulted" and that Ramos presented no evidence that the proposed alternative would decrease the risk of sexual assault in consideration of the prison handbook policy that allowed prisoners to

complain about dangerous cellmates. *Id.* The court concluded that Ramos had failed to demonstrate that the supervisory prison officials acted with deliberate indifference or even negligence. *Id.*

In contrast to Ramos, Plaintiff testified that she did complain, but Plaintiff has not offered evidence that any of her cellmates had a criminal history or incident of violence suggesting a tendency for sexual assault. Nevertheless, *Ramos* bears key similarities to the instant case. Like Ramos, Plaintiff has presented no evidence that Defendants were aware of a nontrivial risk of sexual assault, could have prevented it without undue burden, and chose to do nothing. Moreover, like Ramos, Plaintiff has presented no evidence that her proposed alternatives of protective custody and transfer to another correctional facility would have decreased the risk of sexual assault in light of the applicable administrative directive. As a result, and in accordance with *Ramos*, Plaintiff has failed to demonstrate that Defendants Duncan, Hodge, and Tredway acted with deliberate indifference.

<u>Count 4</u>

Plaintiff alleges an Eighth Amendment claim against Defendant Corey Knop for allowing Cedrick Johnson, an HIV-positive inmate, into Plaintiff's cell for the purpose of allowing the two inmates to engage in sexual activity. Defendants argue that Plaintiff's claim against Defendant Knop fails because no evidence indicates that Defendant Knop had any knowledge of Johnson's HIV status.

Whether Defendant Knop allowed Johnson into Plaintiff's cell remains disputed, and, because the evidence must be viewed in the light most favorable to Plaintiff, the Court assumes that Defendant Knop did for purposes of this motion. *See Spurling*, 739 F.3d at 1060. Nevertheless, for Eighth Amendment claims, a prisoner must not only demonstrate a prison official's personal involvement but that the prison official knew but deliberately disregarded a substantial risk of harm to Plaintiff. *See Santiago*, 599 F.3d at 756.

The evidence before the Court relevant to assessing Defendant Knop's knowledge consists of Defendant Knop's sworn affidavit regarding his lack of knowledge regarding Johnson's medical condition and Plaintiff's deposition testimony that Defendant Knop should have known based on policies that require review of an inmate's records for housing assignments. However, no evidence suggests Defendant Knop's personal involvement with Johnson's housing assignment, and Plaintiff concedes that she had no other reason to suspect that Defendant Knop knew of Johnson's medical condition.

Because the record contains no evidence that Defendant Knop knew of a substantial risk but deliberately disregarded it, the Court grants Defendants' Motion for Summary Judgment with respect to Count 4.

<u>Count 5</u>

Plaintiff alleges an Eighth Amendment claim against Defendant Chad Ray for exposing Plaintiff to a risk of harm by allowing inmate Calvin Merritte to be her cellmate. Defendants argue that Plaintiff cannot show that Defendant Ray acted with a sufficiently culpable state of mind or that there was a specific threat to her safety.

Viewing the evidence in the light most favorable to Plaintiff, the following occurred. In September 2014, Merritte was assigned to Plaintiff's cell, and Plaintiff and Merritte had previously engaged in a verbal altercation due to Merritte's distaste for Plaintiff's transgender status. Both Plaintiff and Merritte informed Defendant Ray of the verbal altercation and that the cell assignment was a safety issue. Defendant Ray then removed Merritte from the cell to review paperwork. Thereafter, Defendant Ray returned and placed Merritte in the cell. Plaintiff notified Defendant Ray that the cell had only one mattress, and Defendant Ray responded, "I guess one of you are going to learn how to fuck or fight," and walked away laughing. Defendant Ray also said, "I'll be back in twenty minutes to see who's still alive," and, "I know one of you know how to fuck." Merritte was later assigned away from Plaintiff's cell without harming Plaintiff.

Plaintiff's testimony regarding the verbal altercation between her and Merritte suggests no more than mutual animosity. Moreover, Plaintiff concedes that Defendant Ray assessed the risk by reviewing Merritte's records and removed Merritte from

Plaintiff's cell while doing so.    Furthermore, despite the improvident nature of Defendant Ray's comments, no evidence suggests that Defendant Ray had any knowledge that the cell assignment constituted a substantial risk of bodily harm to Plaintiff.

Because the record does not demonstrate a substantial risk or that Defendant Ray acted with deliberate indifference towards the cell assignment, the Court grants Defendants' Motion for Summary Judgment with respect to Count 5.

<u>John Doe Defendants</u>

Defendants John #1 Doe and John #2 Doe remain on docket, and, upon further review, the Court finds that it is appropriate to dismiss these Defendants.  On April 24, 2015, Plaintiff filed an amended complaint, which asserted claims against Defendants John #1 Doe and John #2 Doe (Doc. 71).  On June 1, 2015, Magistrate Judge Philip M. Frazier recommended the dismissal of the claims against the John Doe defendants (Doc. 73).  On July 1, 2015, Judge J. Phil Gilbert adopted the recommendation in full (Doc. 76). Because no claims remain against the John Doe Defendants, the Court dismisses the John Doe defendants with prejudice.

**V.      Conclusion**

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion for Summary Judgment (Doc. 102) is GRANTED.  Defendants John #1 Doe, and John #2 Doe are DISMISSED with prejudice.    The Clerk of Court is DIRECTED to enter

judgment in favor of Defendants Tredway, Duncan, Hodge, Knop, and Ray and against

Plaintiff Cole on Counts 1-5.  There are no remaining claims or parties.  Accordingly,

the Clerk of Court is also DIRECTED to close this case.

**IT IS SO ORDERED.**

**DATED:** December 7, 2016

_**s/ Michael J. Reagan**_
Chief Judge Michael J. Reagan
United States District Court